UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07CV-426-H

GEORGE G. PUCKETT, JR.                                                    PLAINTIFF

V.

AUTOMED TECHNOLOGIES, INC.                                    DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This is a contract and employment dispute between Defendant, AutoMed Technologies, Inc. ("AutoMed") and its former employee, George G. Puckett, Jr. ("Puckett"). The parties dispute the terms under which Puckett was employed between July, 2005, and July, 2006 and the amount he was owed upon his termination. After a full opportunity for discovery, both parties have moved for summary judgment on various aspects of their claims. The Court concludes that the law and evidence do not support a claim for severance benefits under the AutoMed Layoff Severance Policy or under KRS 337.385. Plaintiff's claim for additional salary and bonus remain.

I.

AutoMed is a wholly owned subsidiary of AmerisourceBergin Corporation ("ABC"), a major national pharmaceutical supplier. In 2005, ABC merged all of its technology subsidiaries into AutoMed. Choice Medical Distribution Systems ("Choice") was one of the subsidiaries merged into AutoMed. Puckett was part owner and Executive Vice President of Choice when ABC acquired it in 1998. After the acquisition, he became Vice President of Sales for Choice.

In June, 2005, Puckett met with Alan Zimmerman and Pete Gilbert, both of whom are officers of AutoMed. Over a month long period Puckett had various conversations with the two of them about a new position with AutoMed. In July, 2005, Puckett was hired in the position of Vice President of Technology Solutions for AutoMed. In January, 2006, he was promoted to the position of Vice President of Professional Services Group of AutoMed.

During his discussions with Zimmerman and Gilbert, Puckett was particularly concerned about his compensation. At that time Puckett's base salary, commissions, and bonus for the previous year at Choice had exceeded $218,000. Puckett says that he insisted upon a base salary of not less than $150,000 and a bonus, which would give him an opportunity of minimally earning $200,000 per year. Moreover, Puckett says that he was aware of the Layoff Severance Program Corporate/Regional Vice President policy that provided for a one-year severance pay, payment of accrued vacation and personal days, and continued health insurance for 18 months for any vice president who was severed without cause. He claims that he insisted this policy be part of his severance package. Puckett says that at the conclusion of their last meetings during the American Society of Health System Pharmacists gathering in June, 2005, the parties had agreed upon the terms and conditions of employment that he had requested.

Puckett began his new position in July, 2005. From that time until October 30, 2005 received a base salary of $131,063 annually. Beginning October 30, 2005, AutoMed increased Puckett's salary to $134,339 annually. Beginning in November, 2005, Puckett says that he began requesting the agreed upon salary. He says that he was repeatedly promised that the matter would be resolved.

Puckett's eventual termination arose from his involvement in the purchase of a telephone,

e-mail, and voice mail system for AutoMed. ABC maintains a very formalized process for approving capital expenditures. A capital expenditure request, known as a CER, was required to be submitted on a particular form and accompanied by information that allowed all the required signers to have the ability to review the project. In the fall of 2005, Puckett was part of a team that prepared a CER to implement a communications upgrade for AutoMed. Puckett says that this CER was processed in the normal fashion and obtained the signatures of Gilbert, Zimmerman and the President of the drug company division of ABC, Terry Haas ("Haas"). The approval process was completed on November 22, 2005, and Puckett signed off on the purchase.

Many months later controversy erupted concerning Puckett's actions. AutoMed executives say that they were unaware until the spring of 2006 that Puckett had actually executed the $500,000 lease agreement with U.S. Voice and Data, Inc. In May, 2006, U.S. Voice and Data filed a lawsuit against AutoMed demanding performance under the agreements that Puckett executed. The parties eventually settled for a payment of $40,000 by AutoMed to U.S. Voice and Data. AutoMed says that Puckett's execution of the November 22, 2005, lease agreement was unauthorized, was not disclosed to his superiors, and violated AutoMed's policies regarding financial accounting and controls. Without advance notice in July, 2006, AutoMed terminated Puckett's employment.

On July 23, 2007, Puckett filed this action in which he makes the claim for (1) unpaid compensation based upon the agreed $150,000 annual salary; (2) a bonus of $45,000 for the 2005-2006 fiscal year; (3) severance payments for one year of salary, unused vacation days, one year of COBRA payment premiums, as well as certain other charges for medical expenses not covered under his individual policy; and (4) certain statutory damages, such as double damages

and attorney's fees, under KRS 337.385.

## II.

The Court sees no basis for finding a written employment contract. Consequently, Puckett must be deemed an at-will employee under Kentucky law. *See Noel v. Elk Brand Mfg. Co.*, 53 S.W.3d 95, 98 (Ky. Ct. App. 2000) ("Employment in Kentucky is 'at will' unless the parties otherwise agree."); *See also Shah v. Am. Synthetic Rubber Corp.*, 655 S.W.2d 489, 492 (Ky. 1983) (stating that employment is at-will unless the parties clearly express their intention to alter the relationship). The parties did agree, however, that Puckett would work for a certain amount of salary and bonus. The evidence is disputed about that exact nature of the salary and bonus formula that AutoMed promised. A reasonable jury could conclude either that the amount paid represented the agreement or that the parties reached agreement on a greater amount of salary and bonus that AutoMed breached. Neither party is entitled to summary judgment on these two issues.

## III.

The evidence does not support Puckett's claim for specific severance benefits because Puckett's own testimony is not specific enough to support an agreement on those benefits. Puckett produces no competent evidence that any authorized AutoMed official agreed either specifically or conceptually to provide the specific severance benefits that he now demands. Moreover, the Layoff Severance Program does not apply to Puckett by its own terms. Under no construction of the evidence was Puckett terminated due to a layoff. Therefore, the Court finds no agreement that Puckett was entitled to a one-year severance, vacation days or payment of COBRA premiums. This result applies regardless of whether Puckett's termination was proper

as a matter of cause or without cause as an at-will employee. AutoMed is entitled to summary judgment on Puckett's claims under the Layoff Severance Program.

IV.

Finally, Puckett also makes a claim under KRS Chapter 337 for liquidated damages and attorney's fees. The parties dispute whether Puckett is a person who does not meet the definition of an employee as set forth in KRS 337.010(2). That portion of the statute states:

> As used in ... KRS 337.385..., unless the context requires otherwise: (a) 'Employee' is any person employed by or suffered or permitted to work for an employer, but shall not include...any individual employed in a bona fide executive, administrative, supervisory, or professional capacity, or in the capacity of outside salesman, or as an outside collector as the terms are defined by administrative regulations of the commissioner.

Ky. Rev. Stat. Ann. § 337.010(2) (2006).

Whether Puckett is an exempt employee under KRS Chapter 337 is a legal issue for the Court to decide. This Court has recently considered this portion of the statute in some detail. *See Whitewood v. Robert Bosch Tool Corp.*, 2006 U.S. Dist. LEXIS 73232 (W.D. Ky. 2006); affirmed, *Whitewood v. Robert Bosch Tool Corp.*, 2009 U.S. App. LEXIS 6227 (6th Cir. 2009). Though our case is different than the circumstances in *Whitewood*, some of the general concepts are applicable. *Whitewood* involved an engineer; our case concerns an executive administrator or supervisor. *Whitewood*, 2006 U.S. Dist. LEXIS 73232, *1. AutoMed has made a sound case that Puckett fits the role of an executive, administrator, or supervisor. Puckett, who knows precisely his role in the company, has denied none of it.

Puckett appears to be a highly prized, well paid computer programmer who created the software program architecture for his own company, Choice Medical Distribution Systems. He

5

was a part owner and Executive Vice President of Choice. After this company merged with AutoMed, Puckett occupied a series of executive positions at AutoMed, first as Vice President of Technology Solutions and then as Vice President of the Professional Services Group.

In each of these positions Puckett appears to have acted in an executive and supervisory capacity, exercising independent judgment and some management responsibility within the company. For instance, even the controversy that led to Puckett's eventual termination involved the exercise of significant management and discretionary responsibilities. In this role and as Vice President in charge of two separate departments, Puckett appears to have exercised discretion and independent judgment in the management of some AutoMed operations. All of these criteria are the type which the Kentucky Administrative Regulations have recognized as qualifying for the exemption. *See* 803 Ky. Admin. Regs. 1:070 §§ 2 and 3 (2009).

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that each of the party's motions are SUSTAINED IN PART and DENIED IN PART:

(1) Plaintiff's claims for severance benefits under the Layoff Severance Policy are DISMISSED WITH PREJUDICE.

(2) Plaintiff's claims under KRS 337.385 are DISMISSED WITH PREJUDICE.

(3) Defendant's motion for summary judgment as to Plaintiff's claims for additional salary and bonus are DENIED and those claims shall continue.

This is not a final order.

cc:     Counsel of Record